Joanne Lichtman (SBN 137300)
lichtmanj@howrey.com
Andrea Maldonado Weiss (SBN 252429)
weissa@howrey.com
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071-2627
Telephone: (213) 892-1800
Facsimile:  (213) 892-2300

Dale J. Giali (SBN 150382)
gialid@howrey.com
HOWREY LLP
4 Park Plaza, Suite 1700
Irvine, California 92614-2559
Telephone: (949) 759-3944
Facsimile:  (949) 266-5529

Attorneys for Defendant DREYER'S GRAND
ICE CREAM, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MIRKO CARREA, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>DREYER'S GRAND ICE CREAM, INC.,<br><br>      Defendant. | Case No. CV 10-01044 JSW<br><br>The Honorable Jeffrey S. White<br><br>**DEFENDANT DREYER'S GRAND ICE CREAM, INC.'S NOTICE OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; PROPOSED ORDER**<br><br>[Request for Judicial Notice filed concurrently]<br><br>Date:      January 7, 2011<br>Time:     9:00 a.m.<br>Ctrm:    11 – 19th Fl.<br><br>Second Amended Complaint filed: 9/14/10 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 7, 2011, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 11, 19th Floor, of this Court, located at 450 Golden Gate Ave., San Francisco, California, defendant Dreyer's Grand Ice Cream, Inc. will and hereby does move the Court for an order dismissing plaintiff Mirko Carrea's Second Amended Class Action Complaint ("SAC") and each claim therein without leave to amend.

This motion is made pursuant to Fed. R. Civ. P. 8, 9(b) and 12(b)(6) and is based on the following grounds:

1.    The SAC fails to state a plausible claim for relief as required by Fed. R. Civ. P. 8;

2.    Plaintiff's claims fail as a matter of law because certain of the advertising statements on which those claims are premised are non-actionable puffery;

3.    Plaintiff's claims are expressly preempted by uniform federal labeling standards promulgated by Congress and the U.S. Food and Drug Administration ("FDA") and, therefore, should be dismissed;

4.    The Court should abstain from determining plaintiff's claims in this case based on the doctrine of primary jurisdiction;

5.    Plaintiff lacks standing to bring claims pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*;

6.    Plaintiff fails to state a claim under New York General Business Law ("GBL") § 349;

7.    The SAC fails to plead the claims with particularity as required by Fed. R. Civ. P. 9(b);

8.    Plaintiff may not seek disgorgement under the UCL or FAL.

This motion is based on this notice of motion, the memorandum of points and authorities, the pleadings and documents on file in this lawsuit, the concurrently filed request for judicial notice and on other such matters and evidence as may be presented to the Court at the hearing.

1   Dated:  October 22, 2010                    HOWREY LLP
                                                Joanne Lichtman
2                                               Dale J. Giali
                                                Andrea Maldonado Weiss
3

4                                               By:_____ /s/ *Joanne Lichtman*_____
                                                        Joanne Lichtman
5                                               Attorneys for Defendant
                                                DREYER'S GRAND ICE CREAM, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

1

<b><u>TABLE OF CONTENTS</u></b>

2
<b><u>Page(s)</u></b>

3
*INTRODUCTION AND SUMMARY OF ARGUMENT* ............................................................................ 1

4
*ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))* .................................................................. 2

5
*ARGUMENT* .................................................................................................................. 2

6
I.    THE SAC FAILS TO SET FORTH A PLAUSIBLE CLAIM FOR
      RELIEF. ................................................................................................................ 2

7

8
      A.    Plaintiff's Theory of Liability Does Not Even Apply To Dibs
            Products. ...................................................................................................... 4

9
      B.    Plaintiff's Theory of Liability Is Fundamentally Flawed. ................................ 4

10
II.   THE CHALLENGED STATEMENTS ARE NON-ACTIONABLE
      PUFFERY. ............................................................................................................ 7

11

12
III.  CLAIMS BASED ON "0G TRANS FAT" ARE EXPRESSLY
      PREEMPTED. ........................................................................................................ 8

13
IV.   THE COURT SHOULD ABSTAIN FROM DECIDING THE CLAIMS. ............................... 10

14
V.    PLAINTIFF LACKS STANDING UNDER THE UCL, FAL, AND
      CLRA. .............................................................................................................. 11

15

16
      A.    Plaintiff Does Not Have Standing To Pursue Claims Based On
            Dibs Products. ............................................................................................. 11

17
      B.    Plaintiff Does Not Have Standing To Pursue Claims Based On
            Advertisements He Did Not Rely On. ........................................................... 11

18

19
      C.    Plaintiff Has Not Pled Any Facts To Support His Allegation That
            He Paid A Premium For Drumstick Products. .............................................. 12

20
VI.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER GBL § 349 ............................. 13

21
VII.  THE SAC IS NOT PLED WITH REQUISITE PARTICULARITY. .................................... 14

22
VIII. PLAINTIFF IMPROPERLY SEEKS DISGORGEMENT OF ILL-
      GOTTEN GAINS. .................................................................................................. 15

23
*CONCLUSION* ............................................................................................................ 15

24

25

26

27

28

HOWREY LLP

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Am. Italian Pasta Co. v. New World Pasta Co.*,
    371 F.3d 387 (8th Cir. 2004) ............................................................................7, 8

*Animal Legal Defense Fund v. Mendes*,
    160 Cal. App. 4th 136 (2008) ............................................................................13

*Annunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..............................................................8

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................................1, 3, 6

*Baggett v. Hewlett-Packard Co.*,
    2009 U.S. Dist. LEXIS 95241 (C.D. Cal. Sept. 29, 2009) ...................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................1, 3

*Biotics Research Corporation v. Heckler*,
    710 F.2d 1375 (9th Cir. 1983) ............................................................................7

*Brockey v. Moore*,
    107 Cal. App. 4th 86 (2003) ............................................................................5

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ............................................................................7

*Chacanaca v. The Quaker Oats Co.*,
    No. 10-0502 (N.D. Cal. Oct. 14, 2010) ..............................................................9

*Conboy v. AT&T Universal Card Servs. Corp.*,
    84 F. Supp. 2d 492 (S.D.N.Y. 2000) ..............................................................3

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal. App. 4th 1351 (2003) ............................................................................3, 8

*Cortez v. Purolator Air Filtration Products Co.*,
    23 Cal. 4th 163 (2000) ............................................................................15

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998) ..............................................................8

*Fiedler v. Clark*,
    714 F.2d 77 (9th Cir. 1983) ............................................................................7

*Fraker v. KFC Corp.*,
    2006 U.S. Dist. LEXIS 79049 (S.D. Cal. Oct. 19, 2006) ...................................8

*Freeman v. Time, Inc.*,

HOWREY LLP

68 F.3d 285 (9th Cir. 1995) ........................................................................................... 3, 5

*Gordon v. Church & Dwight Co.*,
2010 U.S. Dist. LEXIS 32777 (N.D. Cal. Apr. 2, 2010) ......................................... 10

*Hall v. Time, Inc.*,
158 Cal. App. 4th 847 (2008) ................................................................................. 13

*Haskell v. Time, Inc.*,
857 F. Supp. 1392 (E.D. Cal. 1994) ...................................................................... 5, 7

*Horowitz v. Stryker Corp.*,
613 F. Supp. 2d 271 (E.D.N.Y. 2009) .................................................................... 13

*Johns v. Bayer Corp.*,
2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ...................................... 11, 12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................................ 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ........................................................................................ 15

*Laster v. T-Mobile USA, Inc.*,
2009 U.S. Dist. LEXIS 116228 (S.D. Cal. Dec. 14, 2009) ..................................... 11

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995) ...................................................................................... 7

*Loreto v. Procter & Gamble*,
--- F.Supp.2d ---, 2010 U.S. Dist. LEXIS 91699 (S.D. Ohio Sept. 3, 2010) .......... 13

*Lyons v. CoxCom, Inc.*,
2009 U.S. Dist. LEXIS 122849 (S.D. Cal. Feb. 6, 2009) ....................................... 11

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005) ................................................................................. 15

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
292 F. Supp. 2d 535 (S.D.N.Y. 2003) ...................................................................... 8

*Malaco Leaf, AB v. Promotion in Motion, Inc.*,
287 F. Supp. 2d 355 (S.D.N.Y. 2003) ...................................................................... 8

*Marcus v. AT&T Corp.*,
138 F.3d 46 (2d Cir. 1998) ...................................................................................... 3

*McKinniss v. Sunny Delight Beverages Co.*,
2007 U.S. Dist. LEXIS 96108 (C.D. Cal. Sept. 4, 2007) ...................................... 3, 6

*Medina v. Safe-Guard Products, International, Inc.*,
164 Cal. App 4th 105 (2008) .................................................................................. 13

*Moss v. U.S. Secret Serv.*,
572 F. 3d 962 (9th Cir. 2009) ................................................................................... 3

-iii-

HOWREY LLP

*Mut. Pharm. Co. v. Watson Pharm., Inc.,*
   2009 U.S. Dist. LEXIS 107880 (C.D. Cal. Oct. 19, 2009) ....................................................10

*Newcal Indus., Inc. v. IKON Office Solution,*
   513 F.3d 1038 (9th Cir. 2008) ........................................................................................................7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
   85 N.Y.2d 20 (N.Y. 1995).........................................................................................................3, 13

*Peterson v. Cellco Partnership,*
   164 Cal. App. 4th 1583 (2008) ....................................................................................................13

*Red v. Kraft Foods, Inc.,*
   No. 10cv1028 (C.D. Cal. Sept. 16, 2010)......................................................................................9

*Red v. The Kroger Co.,*
   No. 10-01025 (C.D. Cal. Sept. 2, 2010) .......................................................................................9

*Reiter v. Cooper,*
   507 U.S. 258 (1993) .....................................................................................................................10

*Rosen v. Unilever,*
   2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010)............................................................3, 5

*Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.,*
   547 F. Supp. 2d 939 (E.D. Wis. 2008) ..........................................................................................7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
   806 F.2d 1393 (9th Cir. 1986) .....................................................................................................14

*Software AG, Inc. v. Consist Software Solutions, Inc.,*
   2008 U.S. Dist. LEXIS 19347 (S.D.N.Y. Feb. 21, 2008) .............................................................7

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.,*
   933 F. Supp. 918 (C.D. Cal. 1996) ...............................................................................................7

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
   497 F.3d 144 (2d Cir. 2007) ..........................................................................................................7

*Turek v. General Mills, Inc.,*
   2010 U.S. Dist. LEXIS 91297 (N.D. Ill. Sept. 1, 2010) ...............................................................9

*U.S.  v. Gen. Dynamics Corp.,*
   828 F.2d 1356 (9th Cir. 1987) .....................................................................................................10

*United States v. W. Pac. R.R. Co.,*
   352 U.S. 59 (1956) .......................................................................................................................10

*Vess v. Ciba-Geigy Corp.,*
   317 F.3d 1097 (9th Cir. 2003) .....................................................................................................14

*Videtto v. Kellogg,*
   2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 21, 2009) .............................................................6

*Vinci Inv. Co. v. Mid-Century Ins. Co.,*
   2008 U.S. Dist. LEXIS 82628 (C.D. Cal. Sept. 30, 2008) ..........................................................15

-iv-

HOWREY LLP

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
　673 F. Supp. 2d 1073 (E.D. Cal. 2009) ............................................................... 14

*Werbel v. Pepsico, Inc.*,
　2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) ....................................... 6

*Wyeth v. Levine*,
　129 S. Ct. 1187 (2009) ......................................................................................... 10

**STATUTES**

21 U.S.C. § 301 .......................................................................................................... 8

21 U.S.C. § 341 .......................................................................................................... 8

21 U.S.C. § 343 ................................................................................................. 2, 9, 10

Cal. Bus. & Prof. Code § 17204 .............................................................................. 11

Cal. Bus. & Prof. Code § 17535 .............................................................................. 11

Cal. Civ. Code § 1780 .............................................................................................. 11

New York General Business Law § 349 ........................................................... 2, 3, 13

**RULES**

Fed. R. Civ. P. 8 ................................................................................................. 1, 2, 3

Fed. R. Civ. P. 9 ......................................................................................................... 2

**REGULATIONS**

21 C.F.R. § 1.1 ........................................................................................................... 8

21 C.F.R. § 100.1 ....................................................................................................... 9

21 C.F.R. § 101.13 ..................................................................................................... 9

21 C.F.R. § 101.9 ................................................................................................... 2, 8

64 Fed. Reg. 62746 (Nov. 17, 1999) ....................................................................... 11

64 Fed. Reg. 62754-64 (Nov. 17, 1999) .................................................................. 11

68 Fed. Reg. 41434, 41498 (July 11, 2003) ............................................................ 10

68 Fed. Reg. 41507, 41509 (July 11, 2003) ............................................................ 11

75 Fed. Reg. 22602-03 (April 29, 2010) .................................................................. 11

MOTION TO DISMISS SECOND AMENDED COMPLAINT - **Case No. CV10-01044 JSW**

HOWREY LLP

1

### _INTRODUCTION AND SUMMARY OF ARGUMENT_

2    The Second Amended Complaint ("SAC") is plaintiff's third attempt to plead false advertising

3    claims against defendant Dreyer's Grand Ice Cream, Inc. ("Dreyer's") with respect to two distinct

4    Dreyer's products:  Classic Drumstick® Sundae Cone ("Drumstick") and Dibs® Bite Sized Frozen

5    Snacks ("Dibs").[1]  The SAC suffers from the same fatal defects as its predecessors, as well as new

6    ones.  This action should be dismissed with prejudice.

7    Plaintiff still fails to state a plausible claim for relief as required under Fed. R. Civ. P. 8 and the

8    Supreme Court's recent decisions in _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 570 (2007) and

9    _Ashcroft v. Iqbal_, 129 S. Ct. 1937, 1949 (2009).  Based on the statements "0g Trans Fat," "Classic,"

10   "The Original Vanilla," and "The Original Sundae Cone,"[2] plaintiff manufactures a theory that a

11   reasonable consumer would be "misled" into believing that the Drumstick and Dibs products are

12   "nutritious," "healthy" and "better than similar products," and that the current Drumstick product in

13   grocery stores contains the identical ingredients as the first "Drumstick" created in 1928.  SAC, ¶¶ 2,

14   3, 9, 25.  There simply is nothing on the Drumstick or Dibs packaging that would lead a reasonable

15   consumer who sought to purchase these chocolate covered frozen desserts to reach the conclusion that

16   they were purchasing "nutritious" and "healthy" products, or that the products were "better than

17   similar products."

18   _____

19   [1] In his prior complaint, plaintiff's "Drumstick" claims related to the four cone box of Drumstick®

20   Vanilla _Fudge_ Sundae Cone product.  _See_ First Am. Class Action Compl. ("FAC"), Dkt. #7, ¶¶ 2, 14, 18.  In the SAC, he changes his claims to the four cone box of Drumstick® _Vanilla_ Sundae Cone

21   product.  SAC, ¶ 9 & Ex. A.  In the FAC, plaintiff's Dibs claim related to Dibs® Bite Size Frozen Snacks with Nestlé Crunch® coating.  _See_ FAC, ¶ 18.  In the SAC, plaintiff alleges that this is a class

22   action against Dreyer's for misleading consumers about the ingredients and quality of its "Dibs ice cream product[]" (SAC, ¶ 1), without specifying among the five flavors or multiple package sizes of

23   Dibs products.  As addressed below, plaintiff does not even allege he purchased a Dibs product.

24   [2] Only _one_ of these statements – "0g Trans Fat" – ever appeared on a Dibs product package.

25   Moreover, since 2008 "0g Trans Fat" has not appeared on the front panel of Drumstick (or most Dibs) packaging ("Trans Fat 0g" is located only in the Nutrition Facts box).  _See_ Exs. A, B, C, & D to

26   Request for Judicial Notice ("RJN"), filed concurrently.  Also, after 2008, the word "Classic" no longer appears on the Drumstick package.  _See_ RJN Ex. A.  The picture of the front panel of a

27   Drumstick box attached to the SAC as Exhibit A, which has the "0g Trans Fat" and "Classic" statements, is from a package that has not been used since at least 2008.

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT - **Case No. CV10-01044 JSW**

HOWREY LLP

The SAC also suffers from a number of other deficiencies, which independently compel dismissal of plaintiff's claims with prejudice: *First*, "The Original Sundae Cone," "The Original Vanilla," and "Classic" statements are non-actionable puffery. *Second*, certain of plaintiff's claims are expressly preempted by federal law. The SAC ignores both the federal law requiring Dreyer's to state the level of trans fat as zero grams (21 C.F.R. § 101.9(c)(2)(ii)) and the prohibition against states imposing non-identical labeling requirements (21 U.S.C. § 343-1). *Third*, plaintiff lacks standing to assert claims under the UCL, the FAL, and the CLRA because he sues over products he never purchased, over advertisements he did not see or rely on, and over purchases that caused him no injury. *Fourth*, plaintiff fails to state a claim under New York General Business Law ("GBL") § 349 because, as a matter of law, the advertisements are not deceptive or misleading, and plaintiff has failed to allege facts showing that the allegedly false advertising caused him injury. *Fifth*, the SAC is not pled with particularity, as required by Rule 9(b). *Sixth*, plaintiff impermissibly seeks disgorgement of all "ill-gotten gains" pursuant to his UCL and FAL claims, but these statutes do not provide for that remedy.

### *ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))*

1. Does plaintiff fail to state a plausible claim for relief pursuant to Fed. R. Civ. P. 8?

2. Are certain of the advertising statements at issue non-actionable puffery?

3. Are plaintiff's claims preempted, or should this Court abstain?

4. Does plaintiff have standing under the UCL, FAL, and CLRA?

5. Does plaintiff state a claim under GBL § 349?

6. Does plaintiff fail to plead with sufficient particularity pursuant to Fed. R. Civ. P. 9(b)?

7. Is plaintiff permitted to seek disgorgement under the UCL and FAL?

### *ARGUMENT*

## I.   THE SAC FAILS TO SET FORTH A PLAUSIBLE CLAIM FOR RELIEF.

Rule 8 requires that a complaint set forth a "short plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Thus, "for a complaint to

1  survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that

2  content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

3  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

4       To state a valid false advertising claim under the UCL, FAL, or CLRA, the advertising must be

5  "likely" to deceive a "reasonable consumer." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995);

6  *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).  Similarly,

7  under New York's GBL § 349, the test is whether the advertising is "likely to mislead a reasonable

8  consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v.*

9  *Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. 1995); *see also Marcus v. AT&T Corp.*, 138 F.3d

10  46, 64 (2d Cir. 1998).

11       If the advertisement would not deceive a reasonable consumer, the false advertising claims may

12  be dismissed as a matter of law and with prejudice.  *See*, *e.g.*, *McKinniss v. Sunny Delight Beverages*

13  *Co.*, No. 07-2034, 2007 U.S. Dist. LEXIS 96108, at *7-13 (C.D. Cal. Sept. 4, 2007); *Rosen v.*

14  *Unilever*, No. 09-2563, 2010 U.S. Dist. LEXIS 43797, *17 (N.D. Cal. May 3, 2010); *Conboy v. AT&T*

15  *Universal Card Servs. Corp.*, 84 F. Supp. 2d 492, 505 (S.D.N.Y. 2000); *Oswego*, 85 N.Y.2d at 26.

16       Whether considered individually or together, the components of plaintiff's theory of liability

17  fall far short of stating a plausible claim for relief.  The statements "0g Trans Fat," "Original Sundae

18  Cone," "The Original Vanilla," and "Classic," together with the statement that the "Drumstick"

19  originated in 1928 simply do not, as a matter of law, "convey the message that its Products are healthy

20  and nutritious" (SAC ¶ 25), or "better than similar ice cream and other frozen dessert products" (*id.*,

21  ¶ 2).  No reasonable consumer would conclude that these statements mean that the Drumstick product

22  in grocery stores today contains the identical ingredients in the "Drumstick" cone made in 1928.  Nor

23  would a reasonable consumer conclude that because the product contains partially hydrogenated

24  vegetable oil ("PHVO") the "Classic" and "Original" statements are false.[3]  *Id.* ¶ 9.  Notably, plaintiff

25  _____

26  [3] Plaintiff generally alleges the "dangers" of PHVO, which he claims is "known to cause a number of
   health problems, including coronary disease, heart attacks and death" (SAC, ¶¶ 5, 20, 21), but makes

27  absolutely no allegations that the Drumstick and Dibs products, or the literally *trace* amounts of PHVO
   in the products, have ever caused any harm to him or anyone.

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT - **Case No. CV10-01044 JSW**

HOWREY LLP

1   does not allege that the "0g Trans Fat" statement on the packaging is false – which it is not – but
2   apparently alleges that it misleads the consumer into believing the products are "healthy and
3   nutritious" and identical to the first "Drumstick" cone made in 1928. *Id.*, ¶ 3. These unsupported
4   inferences of what a reasonable consumer would likely believe when purchasing these dessert products
5   are not plausible.

6       **A.    Plaintiff's Theory of Liability Does Not Even Apply To Dibs Products.**

7           While plaintiff tries to blur the distinction between Drumstick and Dibs products –
8   conveniently using the terms "Ice Cream Products" and "Products" throughout the SAC – the only
9   factual allegation in the SAC concerning Dibs is that the packaging bears the "0g Trans Fat" statement.
10  SAC, ¶¶ 1, 3. As alleged in the SAC, all of the other statements – "The Original Sundae Cone," "The
11  Original Vanilla," "Classic," and the statement describing the origin of the "Drumstick" – are on
12  ***Drumstick*** packaging and associated with ***Drumstick*** products only. *Id.; see also* RJN Exs. A, B, C &
13  D. Accordingly, the theory on which plaintiff's claims are based – that *all* of the advertising
14  statements *taken together* convey that the products are "nutritious," "healthy," and "better than similar
15  ice cream and other frozen dessert products" – do not and cannot apply to Dibs.

16      **B.    Plaintiff's Theory of Liability Is Fundamentally Flawed.**

17          No reasonable consumer would interpret the advertising in the manner alleged. First, plaintiff's
18  claim that the "0g Trans Fat" statement conveys "a certain high quality and healthiness" to the
19  products and conveys that the product is "nutritious and healthy" is inconsistent with the actual
20  labeling. *See* SAC, ¶¶ 3, 25. The product packaging contains bold and graphic color photos of frozen
21  dessert foods, including, for example, a sugar cone, chocolate coating, and peanuts. *See* RJN Exs. A,
22  B, C & D. Both products include a statement on the front of the packaging that artificial flavor is
23  added. *See id.* Dibs also includes language that it is "a snack sensation to tempt your sweet tooth" and
24  Drumstick states it a "Sundae Cone . . . topped with roasted peanuts" and includes a "[r]ich chocolately
25  lining," "[c]hocolately surprise," and "[c]rispy sugar cone."[4] *Id.* Contrasted with these unambiguous

26

27  [4] In assessing plaintiff's claims, the entire label is relevant. *Freeman*, 68 F.3d at 290 ("Any ambiguity
28  that [plaintiff] would read into any particular statement is dispelled by the promotion as a whole.");

(Continued...)

1   advertisements, the labeling does *not* use the words "healthy," "nutritious," "high quality" or any

2   similar word or phrase.

3        Second, the statements "Classic," "The Original Sundae Cone" and "The Original Vanilla" on

4   the Drumstick packaging, along with the narrative on the box describing the origin of the "Drumstick,"

5   could not be interpreted by a reasonable consumer to mean that the ***ingredients*** in the Drumstick

6   product currently sold in grocery stores are ***identical*** to those in the first "Drumstick" cone ***made in***

7   ***1928***.  The product label does not tie the words "Classic" and "Original" to the products' ingredients

8   and there is no reason why plaintiff, or any consumer, would reach such a conclusion.

9        The implausibility of plaintiff's theory is shared with a number of cases in which courts

10  recently have dismissed false advertising claims.  This Court recently dismissed with prejudice on Rule

11  8 grounds a similar false advertising action, *Rosen v. Unilever*, 2010 U.S. Dist. LEXIS 43797 (N.D.

12  Cal. May 3, 2010) (*Rosen* complaint is attached to RJN as Ex. E).  Like here, the *Rosen* plaintiff sued

13  defendant alleging that defendant falsely represented its product as "nutritious, healthy to consume,

14  and better than butter and similar products" even though the product contained PHVO.  *Id*. at *2-3.

15  The court dismissed the complaint with prejudice because plaintiff relied on an "illogical relationship[]

16  . . . between the nature of partially hydrogenated oil and the representations Defendant makes" about

17  its product, which rendered plaintiff's complaint "implausible on its face."  *Id*. at *17.  Plaintiff's

18  allegations in this case are even less plausible because in *Rosen* defendant affirmatively marketed its

19  product as being made with *nutritious* oils and as a *healthy* substitute to butter.  In contrast, nowhere

20  on Drumstick or Dibs products is "healthy" or "nutritious," or any similar language, used to describe

21  the products.

22        Similarly, in *Werbel v. Pepsico, Inc.*, plaintiff alleged that consumers were misled into

23

24  ────────────

25  (...Continued)

26  *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("[I]f the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation may also be

27  dismissed as a matter of law"); *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003) ("[T]he primary evidence in a false advertising case is the advertising itself.") (internal quotations omitted).

28

believing that Cap'n Crunch's Crunch Berries derives some of its nutritional value from fruit.  No. 09-4456, 2010 U.S. Dist. LEXIS 76289, at *9 (N.D. Cal. July 2, 2010).  This Court rejected plaintiff's theory:

> Nonsense.  It is obvious from the product packaging that no reasonable consumer would believe the Cap'n Crunch derives any nutritional value from berries.  As an initial matter, the term "Berries" is not used alone, but always is preceded by the word "Crunch," to form the term, "Crunch Berries."  The image of the Crunch Berries . . . shows four cereal balls . . . in hues of deep purple, teal, chartreuse green and bright red . . . These cereal balls do not even remotely resemble any naturally occurring fruit of any kind . . . .

*Id.* at *9-10 (dismissal of UCL, FAL, and CLRA claims with prejudice).

Likewise, in *Videtto v. Kellogg*, the court rejected plaintiff's contention that he was misled into believing that Froot Loops cereal contains real fruit.  In words directly applicable here, the court stated that "*survival of the instant claim would require this Court to ignore all concepts of personal responsibility and common sense.*"  No. 08-1324,  2009 U.S. Dist. LEXIS 43114, at *12 (E.D. Cal. May 21, 2009); *see also McKinniss*, 2007 U.S. Dist. LEXIS 96108, at * 11-13 (dismissing false advertising claims with prejudice; "no reasonable consumer, upon review of the label as a whole . . . would conclude that Defendant's products contain significant quantities of fruit or fruit juice").

The same result is fully warranted here.  No reasonable consumer viewing the challenged statements in context would believe that Dreyer's products are marketed as "nutritious" or "healthy," consisting of the identical ingredients as the original 1928 "Drumstick" cone, or "better than similar ice cream and frozen dessert products."  Plaintiff's complaint does not allow the Court to "draw the reasonable inference" that Dreyer's is "liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.[5]

---

[5] Plaintiff's reference to an FDA letter to Dreyer's (SAC, ¶¶ 4, 28) does not make plaintiff's claim plausible.  First, the FDA letter does *not* relate to the claim plaintiff makes in this action, *i.e.*, that the statements "0g Trans Fat," "Classic," "The Original Sundae Cone," or "The Original Vanilla" taken together would mislead a reasonable consumer into believing that Drumstick and Dibs products are "healthy," "nutritious," "better than similar ice cream and frozen dessert products" or made from the same ingredients as 1928.  Second, the FDA letter does not constitute a determination that there has been a violation of the FDCA or NLEA.  *See, e.g.*, *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc*., 547 F. Supp. 2d 939, 947 (E.D. Wis. 2008); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983).  Moreover, Congress created no private right of action to enforce the FDCA or NLEA even assuming a violation.  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-53 (2001); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983).

1

## II.      THE CHALLENGED STATEMENTS ARE NON-ACTIONABLE PUFFERY.

2      "Advertising that amounts to 'mere' puffery is not actionable because no reasonable consumer

3   relies on puffery.  The distinguishing characteristics of puffery are vague, highly subjective claims as

4   opposed to specific, detailed factual assertions."  *Haskell*, 857 F. Supp. at 1399; *see Newcal Indus.,*

5   *Inc. v. IKON Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("[A] statement that is quantifiable,

6   that makes a claim as to the specific or absolute characteristics of a product, may be an actionable

7   statement of fact while a general, subjective claim about a product is non-actionable puffery.")

8   (internal quotations omitted); *Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 160 (2d Cir.

9   2007) (puffery is "a general claim of superiority over comparable products that is so vague that it can

10  be understood as nothing more than a mere expression of opinion" or "exaggerated, blustering, and

11  boasting statement upon which no reasonable buyer would be justified in relying").[6]

12      Courts have routinely found that similarly vague and subjective statements as those at issue

13  here – "Original Sundae Cone," "The Original Vanilla," and "Classic" – are non-actionable puffery.

14  *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 552-53 (S.D.N.Y.

15  2003) ("Our Most Original Pant Since 1892 . . . not actionable"); *Am. Italian Pasta Co.*, 371 F.3d at

16  387 ("America's Favorite Pasta" and "Quality Since 1867" non-actionable); *Malaco Leaf, AB v.*

17  *Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 379 (S.D.N.Y. 2003) ("Famous" not actionable);

18  *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) ("the new Gold

19  Standard" not actionable); *Fraker v. KFC Corp.*, No. 06-1284, 2006 U.S. Dist. LEXIS 79049, at *9-11

20  ————————————————

21  [6] Put another way, a statement amounts to puffery on which no reasonable consumer could rely if it is
    "incapable of objective verification."  *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F.
22  Supp. 918, 931 (C.D. Cal. 1996); *see Software AG, Inc. v. Consist Software Solutions, Inc.*, No. 08-
    389, 2008 U.S. Dist. LEXIS 19347, at *36 (S.D.N.Y. Feb. 21, 2008) (same); *Lipton v. Nature Co.*, 71
23  F.3d 464, 474 (2d Cir. 1995) ("Subjective claims about products, which cannot be proven either true or
    false, are not actionable."); *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir.
24  2004) ("If a statement is a specific, measurable claim or can be reasonably interpreted as being a
    factual claim, *i.e.*, one capable of verification, the statement is one of fact. Conversely, if the statement
25  is not specific and measurable, and cannot be reasonably interpreted as providing a benchmark by
    which the veracity of the statement can be ascertained, the statement constitutes puffery.").
26  "Ultimately, the difference between a statement of fact and mere puffery rest in the specificity of
    generality of the claim."  *Newcal Indus., Inc*, 513 F.3d at 1053.
27

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT - **Case No. CV10-01044 JSW**

(S.D. Cal. Oct. 19, 2006) ("highest quality ingredients," "balanced diet plan," and "part of a sensible diet" not actionable); *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005) ("quality," "high quality," "reliability," and "performance" not actionable); *Consumer Advocates*, 113 Cal. App. 4th at 1361 ("Crystal clear" and "CD quality" not actionable).

Because the challenged statements in this case are not objectively verifiable and rest solely on a consumer's subjective understanding of the words "Original" and "Classic," they are non actionable puffery, and plaintiff's theory of liability – which relies on these statements – fails as a matter of law.

## III.    CLAIMS BASED ON "0g TRANS FAT" ARE EXPRESSLY PREEMPTED.

Congress and the FDA have crafted a detailed, rigorous, comprehensive and uniform system for labeling food products through the FDCA and the NLEA (21 U.S.C. § 301, *et seq.*) and implementing regulations (21 C.F.R. § 1.1, *et seq.*).  This federal statutory and regulatory scheme is designed to ensure that food is safe and is labeled in a consistent manner that does not mislead consumers.  21 U.S.C. §§ 341, *et seq.*

Of specific relevance here, when a manufacturer is required to set forth the amount of trans fat in a product (as Dreyer's is here with respect to Drumstick and Dibs products), it *must* state the amount of trans fat in the label's Nutrition Facts box of the product packaging, and if the product contains less than a half gram of trans fat per serving, it must state the amount as zero grams:

> A statement of the number of grams of *trans* fat in a serving . . . is not required for products that contain less than 0.5 gram of total fat in a serving if no claims are made about fat, fatty acid or cholesterol content. . . . *Trans* fat content shall be indented and expressed as grams per serving to the nearest 0.5 (1/2)-gram increment below 5 grams and to the nearest gram increment above 5 grams. *If the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero.*

21 C.F.R. § 101.9(c)(2)(ii) (emphasis added).[7]  Accordingly, the "0g Trans Fat" statement, as it appears in the Nutrition Facts box, is *expressly required* to be there pursuant to 21 C.F.R. § 101.9(c)(2)(ii), an implementing regulation promulgated under the federal law governing the Nutrition Facts box, 21 U.S.C. § 343(q).

---

[7] Plaintiff does not allege (nor could he) that the zero grams trans fat statement on Drumstick or Dibs products is in any way factually false.

MOTION TO DISMISS SECOND AMENDED COMPLAINT - **Case No. CV10-01044 JSW**

HOWREY LLP

In addition to the trans fat statement required in the Nutrition Facts box, the "0g Trans Fat" statement is *expressly permitted* under federal law to be on the front panel of the label pursuant to 21 C.F.R. § 101.13(i)(3).  This implementing regulation is promulgated under 21 U.S.C. § 343(r).

As to both 21 U.S.C. § 343(q) (Nutrition Facts box) and 21 U.S.C. § 343(r) (nutrition statements elsewhere on a package) – and the implementing regulations promulgated under them – the FDCA/NLEA contains a comprehensive express preemption provision.  *See* 21 U.S.C. § 343-1.  This preemption statute provides that no state may "directly or indirectly establish . . . any requirement for the nutrition labeling of food that is not identical to the requirement of" 21 U.S.C. § 343(q) and 21 U.S.C. § 343(r).  21 U.S.C. § 343-1(a)(4), (a)(5).  The "not identical to" standard precludes any "State requirement [that] directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable provision" or "[d]iffer from those specifically imposed by or contained in the applicable provision."  21 C.F.R. § 100.1(c)(4).

Plaintiff's state law claims – through which he seeks injunctive relief – attempt to impose labeling requirements relating to statements regarding trans fat content that are "not identical to" the FDA's requirements and, as such, the claims are expressly preempted.  *Chacanaca v. The Quaker Oats Co.*, No. 10-0502, slip op. at 2 (N.D. Cal. Oct. 14, 2010) ("[M]otion for judgment on the pleadings is granted with respect to all claims directed at the '0 grams trans fat' statement . . . ; plaintiffs' state law claims seek to impose a requirement in addition to what is mandated by federal statutes."); *Red v. Kraft Foods, Inc.*, No. 10cv1028, slip op. at 1 (C.D. Cal. Sept. 16, 2010) ("[P]reemption applies to Plaintiffs' claims based on representations of . . . '0g trans fat'[] because the FDCA and its promulgating regulations completely circumscribe the circumstances in which th[is] representation[] can be made."); *Red v. The Kroger Co.*, No. 10-01025, slip op. at 8 (C.D. Cal. Sept. 2, 2010) (dismissal with prejudice: "Given that federal regulations specify when the terms 'cholesterol free' can be used, Defendant's compliance with those regulations cannot be deemed to be 'false or misleading'"); *Turek v. General Mills, Inc.*, No. 09-7038, 2010 U.S. Dist. LEXIS 91297, at *17 (N.D. Ill. Sept. 1, 2010) (dismissal with prejudice: "Defendants . . . have overcome the presumption against preemption due to the particularly strong preemptive language of the NLEA, its thorough regulation of fiber, and the inconsistent labeling

1  that plaintiff's claim would require").[8]

2  **IV.    THE COURT SHOULD ABSTAIN FROM DECIDING THE CLAIMS.**

3       Alternatively, plaintiff's claims should be dismissed under the primary jurisdiction doctrine.  To

4  promote the "proper relationships between the courts and administrative agencies charged with

5  particular regulatory duties," the primary jurisdiction doctrine applies when a claim "requires the

6  resolution of issues which, under a regulatory scheme, have been placed within the special competence

7  of an administrative body."  *U.S.  v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956); *Reiter v. Cooper*,

8  507 U.S. 258, 268 (1993).  "When there is a basis for judicial action, independent of agency

9  proceedings, courts may [defer] to the agency charged with primary responsibility for governmental

10  supervision or control of the particular industry or activity involved."  *U.S.  v. Gen. Dynamics Corp.*,

11  828 F.2d 1356, 1362 (9th Cir. 1987).  If preemption does not apply, abstention would be appropriate

12  because of the FDA's primary responsibility in this area.

13       Courts have applied the primary jurisdiction doctrine to claims, like the present one, that have

14  challenged the adequacy of the labeling of an FDA-regulated product.  *See*, *e.g.*, *Mut. Pharm. Co. v.*

15  *Watson Pharm., Inc.*, No. 09-5700, 2009 U.S. Dist. LEXIS 107880, at *15 (C.D. Cal. Oct. 19, 2009)

16  ("[D]isputes concerning the content of [the product's] labels and inserts falls even more squarely

17  within the primary jurisdiction of the FDA"); *Gordon v. Church & Dwight Co.*, No. 09-5585, 2010

18  U.S. Dist. LEXIS 32777, at *2 (N.D. Cal. Apr. 2, 2010).  That the FDA has primary jurisdiction over

19  the labeling of these precise products is demonstrated by plaintiff's own allegations confirming the

20  agency's ongoing actions over the products' labeling.  *See* SAC, ¶¶ 4, 28; *Gordon*, 2010 U.S. Dist.

21  LEXIS 32777, at *5 (issues related to plaintiff's claims under review by FDA, so it "would be

22  inappropriate for this court to assume the FDA's regulatory role").  Importantly, the FDA continues to

23  evaluate whether, and how, it will further regulate label declarations of trans fat.  *See*, *e.g.*, 75 Fed.

24  Reg. 22602-03 (April 29, 2010) (general labeling regulations); 68 Fed. Reg. 41507, 41509 (July 11,

26  [8] *See also* 68 Fed. Reg. 41434, 41498 (July 11, 2003) (explaining FDA's stance that "Section

27  403A(a)(4) of the act (21 U.S.C. 343-1(a)(4)) displaces both state legislative requirements and state
common-law duties."  RJN Ex. F.

1   2003) (rule making re trans fat); 64 Fed. Reg. 62746, 62754-64 (Nov. 17, 1999) (same).  *See* RJN Exs.

2   G, H & I.

3   **V.     PLAINTIFF LACKS STANDING UNDER THE UCL, FAL, AND CLRA.**

4         To establish standing, the UCL and FAL require that a plaintiff establish that he or she has

5   suffered "injury in fact" *and* "has lost money or property" *as a result of* a defendant's alleged conduct.

6   Cal. Bus. & Prof. Code §§ 17204, 17535.  The CLRA has a similar standing provision, which requires

7   that a plaintiff "suffer[ed] any damage as a result of … [the complained of] practice."  Cal. Civ. Code §

8   1780(a).  In order to maintain claims under these statutes, plaintiff must plead and prove actual reliance

9   on the allegedly false advertising statements.  *See*, *e.g.*, *Laster v. T-Mobile USA, Inc.*, No. 05-1167,

10  2009 U.S. Dist. LEXIS 116228, at *12-15 & n.1 (S.D. Cal. Dec. 14, 2009); *Lyons v. CoxCom, Inc.*,

11  No. 08-2047, 2009 U.S. Dist. LEXIS 122849, at *8-12 (S.D. Cal. Feb. 6, 2009).

12        **A.     Plaintiff Does Not Have Standing To Pursue Claims Based On Dibs Products.**

13        Plaintiff does not have standing to pursue claims based on Dibs products because he does not

14  even allege he purchased Dibs, let alone was injured and experienced a loss of money *as a result* of

15  purchasing Dibs.  Plaintiff alleges only that he purchased the *Drumstick* product.  *See* SAC, ¶ 9.

16        Plaintiff's Dibs claims, therefore, should be dismissed under the principle recently reaffirmed

17  in *Johns v. Bayer Corp.*, No. 09-1935, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010).  In

18  *Johns*, plaintiff sought to bring a class action on behalf of consumers of two distinct products:  One a

19  Day Men's 50+ Advantage and One a Day Men's Health Formula.  *Id.* at *3.  The plaintiff, however,

20  did not allege that he purchased the Men's 50+ Advantage product.  *Id.* at *12.  The court held that

21  "[Plaintiff] cannot expand the scope of his claims to include a product he did not purchase," and

22  accordingly, dismissed plaintiff's claims under the UCL and CLRA as to the Men's 50+ Advantage

23  product.  *Id.* at *13.

24        **B.     Plaintiff Does Not Have Standing To Pursue Claims Based On Advertisements He**
25        **Did Not Rely On.**

26        Plaintiff also lacks standing to bring claims with respect to any advertisements that he does not

27  allege he relied on.  Throughout the SAC, plaintiff alleges that Dreyer's conveyed its misleading

28  messages through purported widespread "marketing and advertising."  *See* SAC, ¶¶ 2, 3, 22, 25, 54.

-11-

HOWREY LLP

1    But plaintiff never alleges that he *relied* on any advertising statements other than those contained on

2    the Drumstick labels.  *See id.*, ¶ 9.

3         Again, *Johns* is instructive.  In that case, plaintiff alleged that the defendants made

4    misrepresentations "on product packaging, commercial advertisements, their website, and in other

5    marketing materials and media."  2010 U.S. Dist. LEXIS 10926, at *2 (internal quotations omitted).

6    However, plaintiff did not allege that he relied on any advertisements – other than those contained on

7    the product packaging – in purchasing the Men's Health Formula product.  *Id.* at *12.  The court found

8    that he lacked standing to pursue claims based on the other allegedly false advertisements that he did

9    not rely on in making his purchase.  *Id.* at *13.

10        **C.      Plaintiff Has Not Pled Any Facts To Support His Allegation That He Paid A**

11                  **Premium For Drumstick Products.**

12             Plaintiff's allegation that he suffered an injury by paying a premium for Drumstick products is

13    conclusory and unsupported.  Plaintiff alleges that he would have purchased "a cheaper frozen dessert

14    product from one of Defendant's competitors" if not for the misleading advertising.  SAC, ¶ 11.  But

15    simply because he allegedly would have purchased a less expensive product does not establish that the

16    Dreyer's products were priced at an unlawful "premium."

17             Plaintiff's allegations that two different frozen dessert products cost less than Drumstick

18    products are meaningless.  *See* SAC, ¶ 10.  Any plaintiff in any case could make such allegations

19    simply by identifying a less expensive product in a grocery store.  Plaintiff must plead facts showing

20    that the other dessert products are comparable to the Drumstick products he allegedly purchased in

21    2007 and 2008, that it is fair to compare the prices of the products (same dates, same locations, same

22    terms, neither on promotion, etc.), and that Dreyer's charges a "premium" *as a result of* the alleged

23    false representations, such that plaintiff would otherwise have purchased the comparable product.  But

24    here, plaintiff does not even allege when or where the allegedly competing dessert products could be

25    found at the prices referenced.  Plaintiff's vague allegations that there is a cheaper pack of popsicles or

26    a generic brand "Sundae Cones" – without in any way showing they are comparable to a pack of

27    Drumstick Vanilla Sundae Cones and without any allegations showing that Dreyer's charged a

28    premium as a result of the alleged false or misleading statements – are insufficient.  Simply inserting

HOWREY LLP

1   the word "premium" into a complaint is not sufficient to establish an injury in fact and loss of money

2   or property.  *Cf. Loreto v. Procter & Gamble*, --- F.Supp.2d ---, No. 09-815, 2010 U.S. Dist. LEXIS

3   91699, *32 (S.D. Ohio Sept. 3, 2010) ("Ascertainable loss is insufficiently plead where a plaintiff

4   simply contends that the price charged for the misrepresented product was higher than it should have

5   been as a result of defendant's fraudulent marketing campaign[.]") (internal quotations omitted).

6       To the contrary, plaintiff's allegations show he received the "benefit of the bargain" and, as a

7   matter of law, has no claim.  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008);

8   *Baggett v. Hewlett-Packard Co.*, No. 07-0667, 2009 U.S. Dist. LEXIS 95241, at *9-10 (C.D. Cal. Sept.

9   29, 2009); *Hall v. Time, Inc*., 158 Cal. App. 4th 847, 850-51 (2008) (plaintiff's payment of purchase

10  price did not satisfy UCL standing requirement); *see also Medina v. Safe-Guard Prods., Int'l, Inc*., 164

11  Cal. App 4th 105, 114 (2008); *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 147 (2008).

12  **VI.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER GBL § 349.**

13      For many of the same reasons detailed above, plaintiff's New York state law claims fails.  In

14  order to show entitlement to relief under GBL § 349, a plaintiff must, among other things, demonstrate

15  that the defendant "engaged in a material deceptive act or practice that caused actual . . . harm."

16  *Oswego*, 85 N.Y.2d at 26.  A plaintiff must allege at least a "connection between the defendants'

17  deceptive conduct and a specific injury . . . suffered as a result."  *See Horowitz v. Stryker Corp.*, 613 F.

18  Supp. 2d 271, 287 (E.D.N.Y. 2009).

19      Because the advertisements at issue in the SAC are not deceptive or misleading and no

20  reasonable consumer would interpret them in the manner alleged by plaintiff (*see* Section I, *supra*),

21  plaintiff has no claim under GBL § 349.  *See Oswego*, 85 N.Y.2d at 26 (practice is only deceptive or

22  misleading if it is "likely to mislead a reasonable consumer acting reasonably under the

23  circumstances").  Moreover, because plaintiff has not pled any facts showing that he bought Dibs or

24  relied upon Dibs advertising (*see* Section V, *supra*), he has failed to plead an injury with respect to

25  Dibs, as required to maintain a claim under GBL § 349.  Likewise, because plaintiff has failed to plead

26  any facts showing that he suffered an injury caused by the allegedly false Drumstick advertising (*see*

27  Section V, *supra*), plaintiff has likewise failed to allege a GBL § 349 claim relating to Drumstick.

28

HOWREY LLP

**VII.    THE SAC IS NOT PLED WITH REQUISITE PARTICULARITY.**

Plaintiff also fails to plead his claims with the particularity required by Rule 9(b).  Where a plaintiff alleges a course of fraudulent conduct and relies "on that course of conduct as the basis" for his claims, those claims are "said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . *as a whole* must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) (*quoting Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1103-04 (9th Cir. 2003)) (emphasis added).  Claims for false advertising under the CLRA, UCL and FAL "sound in fraud" and are subject to Rule 9(b)'s heightened pleading standard.  *Kearns*, 567 F.3d at 1125; *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1085-86 (E.D. Cal. 2009).

Here, the SAC clearly "sounds" in fraud and Rule 9(b)'s heightened standard applies.  *See, e.g.*, SAC, ¶ 2 ("Defendant . . . mislead consumers . . ."), ¶ 22 ("Defendant engaged in this misleading and deceptive campaign . . ."), ¶ 54 ("Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.").  To comply with Rule 9(b), averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.  *Vess*, 317 F.3d at 1106.  This means that a plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

First, while plaintiff purports to bring this class action on behalf of consumers who purchased both Drumstick and Dibs, he does not make ***any*** specific factual allegations concerning ***Dibs***, other than that it contains the "0g Trans Fat" statement on the packaging. SAC, ¶ 3.  Plaintiff does not even allege that he ever purchased the product, let alone the specific Dibs product(s) purchased, when and where such purchases were made, or what specific representations – whether the "0g Trans Fat" statement or other statements – he relied on.  *Compare* SAC, ¶ 9 (Drumstick allegations) with non existent allegations re Dibs purchases.  These missing allegations are necessary to adequately assess the sufficiency of the claims with respect to Dibs products because, among other things, (i) not all Dibs products state "0g trans fat" on the front of the package, and (ii) not all Dibs products contain PHVO – i.e., two of the primary allegations making up plaintiff's theory of liability are not present in many

HOWREY LLP

1  Dibs products.  *See* RJN Exs. B, C & D (140 count bag and snack bag do not make the claim "0g trans

2  fat" on the front panel, and vanilla, chocolate and mint flavors to do not list PHVO as an ingredient).

3         Second, plaintiff fails to identify with particularity the specific advertisements that are the basis

4  for his lawsuit.  While plaintiff refers to a number statements on the product *labels* ("0g trans fat,"

5  "The Original Sundae Cone," "The Original Vanilla," and "Classic"), he fails to specify which of those

6  influenced the purchasing decision and he failed to specify what *other advertisements*, if any, are the

7  basis for his lawsuit.  Throughout the SAC, plaintiff generally refers to Dreyer's purported widespread

8  "marketing and advertising."  SAC, ¶¶ 2, 3, 22, 25, 54.  Yet plaintiff never identifies even one such

9  advertisement or the content of such advertisements.  *See Schreiber Distrib. Co.*, 806 F.2d at 1401

10  (identification of the "specific content of the false representations" required under Rule 9(b)).

11  **VIII.   PLAINTIFF IMPROPERLY SEEKS DISGORGEMENT OF ILL-GOTTEN GAINS.**

12         Plaintiff seeks disgorgement of all "ill-gotten gains" under his UCL and FAL claims (SAC,

13  ¶¶ 49, 57 & Prayer For Relief), but non-restitutionary disgorgement is not available under the UCL and

14  FAL.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146, 1148 (2003) ("the

15  remedy of nonrestitutionary disgorgement is not expressly authorized;" plaintiff may only "recover

16  profits unfairly obtained to the extent that these profits *represent monies given to the defendant or*

17  *benefits in which the plaintiff has an ownership interest*") (emphasis added); *Madrid v. Perot Sys.*

18  *Corp.*, 130 Cal. App. 4th 440, 460 (2005) (nonrestitutionary disgorgement is not an available remedy

19  in a class action under the UCL); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177

20  n.10 (2000) (same rule of law applies to the FAL); *Vinci Inv. Co. v. Mid-Century Ins. Co.*, No. 08-152,

21  2008 U.S. Dist. LEXIS 82628, at * 14-15 (C.D. Cal. Sept. 30, 2008) ("The unfair competition law . . .

22  does not allow a plaintiff to seek disgorgement of ill-gotten gains . . . . which, by definition, would

23  include money in which Plaintiff has no ownership interest.").

24                                    ___***CONCLUSION***___

25         For the foregoing reasons, Dreyer's respectfully requests that the Court grant its motion to

26  dismiss with prejudice.

27  Dated:  October 22, 2010            HOWREY LLP

28                                By:_____/s/ *Joanne Lichtman*_____
                                      Joanne Lichtman, Attorneys for Defendant
                                      DREYER'S GRAND ICE CREAM, INC.
                                      -15-